FILED

2025 APR 21  AM 8: 10

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ _CR_____
DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| **JENNIFER FERRELL BRANTLEY**, | § | |
| Plaintiff, | § | **1:25CV00594** ADA |
| v. | § | Civil Action No. _____ |
| **THE UNIVERSITY OF TEXAS AT AUSTIN**, | § | |
| Defendant. | § | |
| _____ | § | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW JENNIFER FERRELL BRANTLEY, Plaintiff in the above styled cause, and respectfully submits this Verified Complaint for Declaratory and Emergency Injunctive Relief against Defendant, the University of Texas at Austin ("Defendant" or "University"), and states the following:

### I. INTRODUCTION

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), to seek immediate injunctive relief from the enforcement of disciplinary sanctions issued against Plaintiff, which were imposed without due process, in an environment of discriminatory and retaliatory treatment, and in disregard of Plaintiff's disability rights.

*Brantley v. University*, Verified Complaint 1

2. Plaintiff faces multiple time-sensitive harms, including an **April 28, 2025, course drop deadline at 5:00 p.m**. and a **May 11, 2025, study abroad departure date**, both of which are jeopardized by the disciplinary action.

3. Plaintiff seeks an Emergency Temporary Restraining Order and Preliminary Injunction to prevent the enforcement of unjust and harmful university sanctions while the underlying claims are adjudicated.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this case arises under federal laws, including Title IX, the Rehabilitation Act, and the U.S. Constitution.

5. Venue is proper in this district under 28 U.S.C. § 1391(b), as the events giving rise to this action occurred in the Western District of Texas, Austin Division.

## III. PARTIES

6. Plaintiff, Jennifer Ferrell Brantley, is an adult student currently enrolled at the University of Texas at Austin in the Department of Government and resides in Travis County, Texas.

7. Defendant, the University of Texas at Austin, is a public institution of higher education and a component institution of the University of Texas System, organized under the laws of Texas and located in Travis County, Texas.

## IV. FACTUAL ALLEGATIONS

*Brantley v. University*, Verified Complaint 2

8. Plaintiff is registered with the University's Disability and Access Office and has documented disabilities which include Attention Deficit Hyperactivity Disorder (ADHD), Post-Traumatic Stress Disorder (PTSD), and Premenstrual Dysphoric Disorder (PMDD), that affect her verbal fluency, and emotional and processing speeds.

9. Plaintiff first disclosed disabilities to the faculty member on August 2, 2024, sexual assault on August 29, 2024, and his unequal treatment (favoritism) toward other students on October 7, 2024. Plaintiff's disclosure referenced both sex-based classroom dynamics and Plaintiff's disability-related challenges, including the faculty member's dismissal of Plaintiff's emotional state and academic needs. The nature of the disclosure implicated concerns under Title IX and the Section 504 of the Rehabilitation Act and required mandatory reporting under the University's HOP 3-3031 policy.

9A. While the University's HOP 3-3031 policy imposes mandatory reporting duties on faculty to comply with Title IX obligations, the failure of the faculty member to report Plaintiff's disclosure constituted more than a policy violation. Because Plaintiff disclosed concerns that reasonably implicated sex-based distress or discrimination, the University—through its agent—was placed on actual notice. The institution's failure to act on that notice resulted in a denial of Plaintiff's access to Title IX protections, supportive measures, and a safe educational environment, in violation of federal law.

9B. In addition to the emotional harm and disclosure-related issues described above, Plaintiff experienced ongoing barriers to accessing approved academic accommodation, including consistent difficulty obtaining a note-taker and problems with an exam. Despite

*Brantley v. University*, Verified Complaint 3

being registered with the University's Disability and Access Office, Plaintiff faced delays and inconsistent implementation of accommodations, which further exacerbated academic distress and denied Plaintiff equal educational access in violation of Section 504 of the Rehabilitation Act.

9C. Plaintiff also made multiple written disclosures via email to the faculty member, describing ongoing emotional distress, trauma-related symptoms, and the impact on Plaintiff's mental health and academic performance from September 2024 to April 2025. These emails, sent over an extended period, reflected consistent attempts to seek understanding or support. Despite these repeated efforts, the faculty member failed to report the disclosures under Title IX or escalate the concerns through appropriate university channels until February 2025. The repeated inaction contributed to Plaintiff's academic deterioration and constituted a pattern of neglect in violation of both Title IX and Section 504.

9D. Throughout the period in question, Plaintiff communicated distress to the faculty member in good faith, expecting support. The faculty member failed to establish clear boundaries or fulfill his role as a mandatory reporter, allowing extended personal disclosures without ever referring Plaintiff to Title IX or Student Outreach Services before February 2025. This prolonged lack of professional guidance and structural support contributed to Plaintiff's emotional harm and created a dynamic in which Plaintiff was later disciplined for conduct that occurred in the absence of any communicated limits until March of 2025.

*Brantley v. University*, Verified Complaint 4

10. The Plaintiff indicated to the faculty member on January 2, 2025, that a report had been filed with the Office of Civil Rights on July 9, 2024. Then the faculty member self-identified as a mandatory reporter and referenced Title IX for the first time on February 7, 2025, and also provided a list of campus resources, including mental health services, after a Title IX notice had been sent to the Plaintiff on February 4, 2025. This referral came only after months of personal disclosures that had gone unreported and unaddressed. The timing suggests a reactive effort to mitigate liability rather than a genuine attempt to support or protect Plaintiff. The vague mention of "keeping communication related to class," absent in earlier communication, left Plaintiff feeling dismissed and confused because she was not in his class. The faculty member's shift in tone, coming only after Plaintiff's disclosure of outside recourse, further exacerbated Plaintiff's emotional distress and contributed to the perception of retaliatory conduct.

11. Throughout their interactions, the faculty member failed to establish clear standards for communication, never defining what "personal," "academic," "related to class," or "coursework" meant to him, and even ignoring clear questions related to his class and coursework. When boundaries were finally introduced on February 7, 2025, they lacked specificity, and the shifting expectations made it impossible for Plaintiff to meaningfully adjust behavior or understand the faculty member's evolving standards. Plaintiff received no guidance on what would be considered excessive until March 5, 2025, and was never informed what "personal" meant to the faculty member. This ambiguity contributed to Plaintiff's distress and was later weaponized to justify disciplinary action for conduct that had not previously been framed as misconduct.

11A. Plaintiff continued to send non-threatening email communications to the faculty member after he expressed a desire to end communication. Plaintiff was never informed

*Brantley v. University*, Verified Complaint 5

that sending non-threatening emails, many of which disclosed distress or disability-related challenges, could constitute a student conduct violation. Email communication is not, in itself, a criminal or disciplinary act under the Student Code, and Plaintiff was unaware that her academic or emotional disclosures were being construed in this way. At no point did the faculty member indicate that these messages would be treated as a violation of university policy or referred to Student Conduct. Plaintiff did not understand the faculty member's message to be a disciplinary warning, and believed communication had been tacitly permitted by prior silence and the nature of their previous exchanges. Plaintiff also thought there had been a misunderstanding for which she needed to repeatedly apologize for and seek to repair the relationship. The decision to discipline Plaintiff for these messages — without any formal warning or disability-informed context — constituted a violation of Plaintiff's procedural due process rights.

11B: Silence from the faculty member was not a form of notice. The faculty member said he thought that Plaintiff would understand if he never responded, but her history of trauma and abusive relationships, where silence was used as a weapon, kept her in an anxious "fixing" state. At no time was Plaintiff clearly informed that her behavior was being evaluated through a disciplinary lens. Plaintiff reasonably believed that had there been a serious concern, the University or the faculty member would have referred the matter to mediation or the Behavior Concerns Advice Line (BCAL), a university-wide resource specifically designed to identify and support students experiencing emotional distress, not Student Conduct. Silence, in the face of escalating distress, is not a substitute for intervention, boundary-setting, or due process.

*Brantley v. University*, Verified Complaint 6

11C. On March 9, 2025, Plaintiff explicitly asked the faculty member whether she was being punished for mentioning perceived favoritism and expressed confusion over perceived changes in tone and support. Rather than providing a clear answer or directing her to appropriate campus services, the faculty member stated on March 10, 2025, that the lack of response was not punitive but expressed distress at the position he was put in — though this was the first time he had ever said so. He also referenced a list of words he said the Plaintiff used to describe him, but Plaintiff informed the faculty member that she was trying to use ChatGPT as a socially reflective tool when she did not understand. The words came from questions she had asked ChatGPT about the dynamic, or those the faculty member personally identified with ("beer snob" is in his BlueSky bio). Plaintiff's continued efforts to seek clarity and support, and to repair, rather than with an intent to harass or disrupt, underscore the lack of fair notice prior to disciplinary action. See *Goss v. Lopez*, 419 U.S. 565, 581 (1975); *Hernandez v. Texas A&M Univ.–Kingsville*, 500 F. Supp. 2d 623, 636 (S.D. Tex. 2006).

12. The faculty member submitted a referral to Student Conduct on March 31, 2025, framing Plaintiff's behavior as problematic, "angry," and "hostile," after Plaintiff disclosed a distressing personal experience on March 28, 2025, in which Plaintiff had been screamed at and belittled publicly by a male — an event that left Plaintiff shaken and emotionally destabilized. This response not only lacked compassion but also constituted a retaliatory act following a trauma disclosure. Rather than protecting Plaintiff or mitigating harm, the faculty member's action caused further emotional and psychological injury and contributed to the disciplinary process that Plaintiff now challenges.

*Brantley v. University*, Verified Complaint 7

12A. Rather than utilizing mediation or BCAL, the faculty member and administration chose to escalate Plaintiff's disability-related communication to Student Conduct. BCAL exists to facilitate early, trauma-informed intervention through coordinated support — not punishment. The university's failure to refer Plaintiff to this resource, despite clear indicators of distress, violated its duty of care and constituted a failure to accommodate under Section 504 and a denial of due process.

12B. While Plaintiff had previously accessed various individual university support services, including mental health counseling and disability accommodation, those services did not function in a coordinated manner and did not adequately address her distress. The faculty member had the option of utilizing BCAL, a non-disciplinary intervention. No one initiated this process on Plaintiff's behalf, despite multiple indicators of distress and disability-related communication difficulties. This failure to intervene appropriately contributed to the denial of due process and constituted a failure to accommodate under Section 504.

12C. On April 7, 2025, Plaintiff inquired about the timeline for a disciplinary decision and was informed that the outcome was expected "by the end of the week," though the conduct investigator clarified that this was not a fixed deadline and it could arrive "a little earlier or later." No decision was issued by that Friday, nor by the following Monday. On Monday, April 14, 2025, Plaintiff submitted a Title IX complaint and contacted the Department of Investigation and Adjudication (DIA) regarding the faculty member. The following evening, the disciplinary outcome was delivered. While the delay may have been procedural, the close proximity between Plaintiff's protected disclosures and the

*Brantley v. University*, Verified Complaint 8

issuance of the disciplinary finding raises a reasonable concern about timing and potential institutional response to Plaintiff's complaint.

12D. On April 18, 2025, the university issued its formal denial of Plaintiff's appeal (Exhibit E). In doing so, the appellate officer stated, "Having a legitimate disability that requires accommodations does not exempt a student from adhering to the behavioral expectations outlined in the Institutional Rules." This categorical statement reflected the university's refusal to consider whether Plaintiff's communication and behavior were related to her documented disability. The institution failed to evaluate or explore whether any intervention, support, or modification to the disciplinary process was appropriate under Section 504.

12E. Plaintiff's appeal was reviewed and denied on all grounds by John Dalton, the Associate Vice President for the Department of Investigation and Adjudication (DIA). Mr. Dalton also oversees the university's Title IX infrastructure and may have had notice of Plaintiff's Title IX complaint filed the day prior to the Student Conduct finding. Mr. Dalton's decision to rule on Plaintiff's appeal despite his supervisory role over Plaintiff's active Title IX complaint potentially represents a significant conflict of interest. His failure to recuse himself may have denied Plaintiff a neutral appellate process and further compounded the institutional bias and retaliation already at issue in the conduct process.

12F. Following the appeal denial — in which Plaintiff's disability and trauma disclosures were dismissed without accommodation — Plaintiff experienced a severe mental health crisis and contacted the Office of Student Conduct in distress. The university responded

only after Plaintiff disclosed suicidality, offering support that had not previously been extended. This delayed response, while procedurally convenient for the university, came too late to prevent significant emotional harm, educational disruption, and reputational damage. Plaintiff has since stabilized and is actively engaged in her academic commitments, including preparation for the London Maymester study abroad program. The request for injunctive relief is narrowly focused, time-limited, and supported by Plaintiff's demonstrated academic success and compliance with all relevant university expectations.

13. Plaintiff is currently under disciplinary probation as of April 15, 2025, which precludes participation in academic and extracurricular activities, including a fully paid, faculty-led study abroad, and places Plaintiff's graduation and Gilman International Scholarship at risk.

14. Enforcement of these sanctions constitutes ongoing and irreparable harm and was issued in a manner that violates Plaintiff's rights under federal law.

14A. Additionally, Plaintiff must drop the Maymester course by **April 28, 2025, at 5:00 PM** if the disciplinary sanction remains in place. Being forced to drop the course would cause permanent academic and financial harm, including the potential loss of her Texas Advance Commitment (TAC) funding — a scholarship that covers full tuition based on financial need. Without this funding, Plaintiff would be unable to complete her degree. This consequence is imminent and cannot be undone once the drop deadline passes.

15. Plaintiff timely submitted an internal appeal to the University challenging the disciplinary sanction imposed by the Office of Student Conduct. That appeal was formally denied on April

*Brantley v. University*, Verified Complaint 10

18, 2025, thereby exhausting Plaintiff's available institutional remedies. A copy of the denial letter is attached as Exhibit E and is submitted under seal due to the inclusion of sensitive and FERPA-protected information.

## V. CLAIMS FOR RELIEF

### Count I – Violation of Procedural Due Process (14th Amendment, 42 U.S.C. § 1983)

16. Plaintiff incorporates the preceding paragraphs.

17. At no point did the faculty member provide notice, guidance, or a warning that Plaintiff's conduct might be viewed as subject to referral. This failure to provide clear notice in advance of disciplinary action violated Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution.

> 17A. The faculty member told Plaintiff to stop "personal" communication on March 10, 2025, but he did not identify the behavior as a potential violation of university policy or the student code of conduct. The communication was not framed as a disciplinary warning. Plaintiff had no reason to believe her communications would later be used as the basis for a Student Conduct referral. This lack of clear, formal notice rendered the university's subsequent disciplinary action procedurally defective under the Fourteenth Amendment. See *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (holding that students facing suspension are entitled to notice and a meaningful opportunity to be heard under the Due Process Clause).

17B. Plaintiff was never informed that expressing distress via email could be interpreted as a disciplinary violation, and she was not given the opportunity to contextualize her communications before being referred to Student Conduct.

18. Defendant, acting under color of state law, deprived Plaintiff of protected interests in education and reputation by enforcing disciplinary action through a process that was fundamentally unfair. Although Plaintiff received a formal notice and was given an opportunity to respond during the Student Conduct investigation, Plaintiff had never been informed by the referring faculty member that any of the communications or behavior in question could constitute a violation of university policy.

18A. The university asserts that Plaintiff was sanctioned solely for communication that occurred after the faculty member told her to "stop." The faculty member had responded to communication in the past that contained a mix of personal and academic information. Plaintiff's personal and academic interests overlap, and her communication style is informed by her diagnosed disabilities. Plaintiff was never informed that continued communication could constitute a violation of the student code of conduct. The faculty member did not reference the conduct policy, indicate that institutional action might result, or provide any warning that future messages would lead to a formal referral. As such, Plaintiff had no meaningful notice that the behavior in question could trigger disciplinary consequences, and there was no fair notice, rendering the university's process constitutionally insufficient under the Fourteenth Amendment. See *Goss v. Lopez*, 419 U.S. 565 (1975).

*Brantley v. University*, Verified Complaint 12

**Count II – Discrimination and Retaliation Under Title IX (20 U.S.C. § 1681 et seq.)**

19. Plaintiff made disclosures to the faculty member regarding gender-based violence and trauma she experienced, and unequal access concerns, including distress connected to gender-based inequities. Plaintiff experienced unequal treatment on the basis of sex in the form of preferential academic support extended to younger female students by the faculty member. Specifically, the faculty member provided advance notice of quiz dates and potentially other academic information to one or more younger female students, who then shared it informally with the rest of the class via GroupMe. However, the faculty member himself did not distribute this information through official channels, such as Canvas or class-wide email, to the full class or to Plaintiff. When Plaintiff first raised this concern on October 7, 2024, the faculty member stated "I've not yet adapted to the world of GroupMe and all that." This differential treatment, favoring students of a particular gender and age demographic, denied Plaintiff equal access to academic information and support, constituting sex-based discrimination in violation of Title IX of the Education Amendments of 1972.

20. Although Plaintiff did not initially frame her disclosures using legal terms, her communications to the faculty member involved trauma stemming from sexual assault and classroom inequity, placing the university on actual notice of a potentially protected complaint under Title IX. On February 4, 2025, the university's Title IX office reached out to Plaintiff in response to the faculty member's report, triggering the institution's obligation to ensure equitable access, supportive measures, and protection from retaliation. Plaintiff declined to formally engage with the Title IX office at the time of outreach due to a prior negative experience involving a dismissed complaint or sexual assault, her earlier disclosures to faculty placed the

*Brantley v. University*, Verified Complaint 13

University on actual notice of sex-based trauma. Regardless of her decision not to participate, the University retained an affirmative obligation under Title IX to provide supportive measures and ensure protection from retaliation.

21. Thereafter, the faculty member began to impose increasingly vague communication boundaries and eventually submitted a Student Conduct referral on March 31, 2025, despite having received Plaintiff's prior disclosures of complex trauma and PTSD stemming from sexual assault. The conduct referral followed shortly after Plaintiff disclosed both her trauma and her engagement with the U.S. Department of Education's Office for Civil Rights, raising a reasonable inference of retaliation for sex-based protected activity under Title IX.

22. The university failed to provide any trauma-informed support or offer accommodations, and it did not consider Plaintiff's limited access to mental health resources or her ongoing efforts to obtain further neuropsychological testing. Instead, the institution escalated the situation to disciplinary sanctions without warning. This course of action denied Plaintiff access to equal educational opportunity and retaliated against her for engaging in protected activity under Title IX and university policy, including disclosures of gender-based trauma and PTSD stemming from sexual assault.

**Count III – Discrimination Under Section 504 of the Rehabilitation Act (29 U.S.C. § 794)**

23. Plaintiff is an individual with a disability, qualified to participate in the University's programs.

> 23A: Plaintiff engaged in protected activity when she filed a civil rights complaint with
> the U.S. Department of Education's Office for Civil Rights (OCR) in July 2024, and
> *Brantley v. University*, Verified Complaint 14

when she disclosed that complaint to a university faculty member on January 2, 2025.

The OCR filing raised concerns under multiple statutes, including Section 504 of the

Rehabilitation Act, Title II of the Americans with Disabilities Act, and the Age

Discrimination Act of 1975, related to barriers to equitable access in higher education.

Plaintiff has now experienced adverse action, including exclusion from academic

programs and referral to the university's disciplinary office, which constitutes unlawful

retaliation under those statutes.

23B. The university's appellate decision explicitly dismissed Plaintiff's disability-related

explanations, stating that "Having a legitimate disability that requires accommodations

does not exempt a student from adhering to the behavioral expectations outlined in the

Institutional Rules." This statement confirms the university's failure to assess Plaintiff's

behavior in light of her disability, or to provide accommodations during the disciplinary

process, as required by Section 504 of the Rehabilitation Act. By failing to evaluate

whether Plaintiff's conduct was a manifestation of her known disabilities, and by

applying disciplinary sanctions without considering accommodations or engaging in any

interactive process, Defendant denied Plaintiff meaningful access to her education under

Free Appropriate Public Education (FAPE). This denial of educational access and support

during a critical academic period—including midterms, finals, and a federally funded

study abroad program—violated Section 504 and the Department of Education's official

guidance on disability-based discipline.

23C. On October 29, 2024, Plaintiff disclosed her FMLA status and serious health-related

challenges in an email to the faculty member during the academic period in which she

*Brantley v. University*, Verified Complaint 15

was also employed by the University. This communication constituted a protected disclosure under federal law, including the FMLA and Section 504. The faculty member acknowledged the disclosure by saying that he would have granted a different testing date if asked, but this was never discussed on August 29, 2024, when reviewing Plaintiff's disability accommodations or how they would apply to the faculty member's course. He did not respond with support, or refer Plaintiff to any appropriate university offices, despite having actual notice of her disability-related distress. In the months that followed, Plaintiff continued to disclose symptoms of trauma and academic difficulty. Rather than initiate support or engage the interactive process required under Section 504, the faculty member imposed silence, followed by increasingly vague restrictions, and ultimately referred Plaintiff to Student Conduct on March 31, 2025. This disciplinary referral, coming months after a protected disclosure and in the context of Plaintiff's worsening distress, constitutes retaliatory and discriminatory treatment in violation of federal law.

23D. Plaintiff was known to be experiencing testing-related distress on October 29, 2024, as the university testing center (CTC) contacted the faculty member during a scheduled exam window to report Plaintiff's difficulty. The faculty member acknowledged receiving this communication, yet chose not to respond until Plaintiff's double-time accommodation had expired. The faculty member tested students from 8:00 a.m. to 9:15 a.m., and then did not hold his usual office hours immediately following his class. Plaintiff's testing period was from 8:30 a.m. to 11:00 a.m., but he did not contact her until 11:50 a.m. This failure to respond or provide timely support during a high-stakes academic evaluation, despite having actual knowledge of Plaintiff's disabilities and

*Brantley v. University*, Verified Complaint 16

authorized accommodations, constitutes deliberate indifference under Section 504. Rather than acting to mitigate the impact of Plaintiff's disability, the faculty member allowed an avoidable failure of access to occur, further compounding Plaintiff's distress and institutional exclusion.

23E. The faculty member who initiated the disciplinary referral was a professor in Plaintiff's major department. Plaintiff never approached him in person, interrupted his classes, or appeared at his office hours during the semester she is not enrolled in his course. The entire basis of the referral was Plaintiff's email communications, which usually included disclosures of trauma, distress, and disability-related difficulties. Rather than treating these as protected or disability-informed disclosures, the faculty member framed Plaintiff as "angry" and "hostile" in his report to Student Conduct. The university accepted this characterization without examining the context of Plaintiff's diagnoses or need to externally process information. As a result, Plaintiff has been left feeling unsafe in her own academic department and has avoided departmental spaces and faculty interactions, further depriving her of equal access to education.

24. Plaintiff experienced significant difficulty obtaining timely and effective access to an approved note-taker, despite being registered with the University's Disability and Access Office. This failure compromised Plaintiff's academic standing and denied equal access to classroom materials and instruction. The faculty member sent Plaintiff away from his office on a couple of occasions regarding disability-related questions, instructing her to contact Disability and Access. In a separate incident, Plaintiff experienced a severe PTSD episode while at the university's testing center (CTC) and communicated a request for help to the faculty member involved in this

matter. The faculty member later admitted to seeing but ignoring this request. These actions —
and failures to act — reflect a pattern of neglect and denial of accommodation that materially
affected Plaintiff's educational access and well-being, in violation of Section 504 of the
Rehabilitation Act.

25. These failures, taken together, rise to the level of deliberate indifference, entitling Plaintiff to
equitable relief under Section 504 of the Rehabilitation Act.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

a. Issue a Temporary Restraining Order and Preliminary Injunction enjoining the University of
Texas at Austin, its officers, agents, employees, and all persons acting in concert with them from
enforcing any disciplinary action that bars Plaintiff from participating in the London Maymester
study abroad program until the completion of the course, on June 9, 2025;

b. Declare that Defendant's actions violated Plaintiff's rights under the U.S. Constitution, Title
IX, and Section 504;

c. Order immediate restoration of Plaintiff's academic standing, rights, and access to educational
opportunities;

d. Award costs and reasonable attorneys' fees under 42 U.S.C. § 1988, if applicable; and

e. Grant any other relief this Court deems just and proper.

*Brantley v. University*, Verified Complaint 18

f. Plaintiff respectfully requests that if the Court finds any claim insufficiently pleaded, such claim be dismissed without prejudice and that Plaintiff be granted leave to amend.

## VII. VERIFICATION

I, Jennifer Ferrell Brantley, declare under penalty of perjury that I have read the foregoing Verified Complaint, and that the factual allegations are true and correct to the best of my knowledge.

Executed on this 21st day of April, 2025, in Travis County, Texas.

*Jennifer Ferrell Brantley*

Jennifer Ferrell Brantley

Plaintiff, Pro Se

7117 Wood Hollow Dr., Apt. 1126

Austin, Texas 78731

brantley.jennifer@gmail.com

945-544-7519