UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER FERRELL BRANTLEY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL NO. A-25-CV-00594-ADA |
| | § | |
| THE UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant The University of Texas at Austin's ("UT Austin") Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 45. Having reviewed the parties' briefing, the operative complaint, and the applicable law, Defendant's Motion is **GRANTED**.

## I.     BACKGROUND

Plaintiff, proceeding *pro se*, filed suit against UT Austin for claims arising from events that resulted in UT Austin imposing disciplinary sanctions on her. ECF No. 1. Plaintiff's First Amended Complaint ("FAC") alleges these sanctions arose from "a breakdown in communication during a period of disability-related emotional distress, where Plaintiff's trauma and neurodivergent-informed communication patterns were misinterpreted without adequate institutional support or accommodation." ECF No. 10 at ¶ 2. According to the FAC, Plaintiff sent numerous emails to a faculty member for months, despite his request that Plaintiff not contact him except for questions related to coursework. *Id.* at ¶¶ 9–11C. Because Plaintiff did not stop, the faculty member submitted a referral to Student Conduct on March 31, 2025. *Id.* at ¶¶ 12–12A. She learned of the disciplinary referral on April 4, 2025 and filed a response. *Id.* at ¶¶ 12A–12B. On April 15, 2025, she received disciplinary sanctions for her conduct. *Id.* at ¶ 12C. Plaintiff appealed

her sanctions, but her appeal was denied on April 18, 2025. *Id.* at ¶¶ 12D–12E. Plaintiff was placed on disciplinary probation as of April 15, 2025. *Id.* at ¶ 13.

Plaintiff alleges that the disciplinary sanctions "continue[] to affect her academic standing and eligibility for certain internship opportunities, graduate school applications, and future employment requiring background checks." *Id.* She thus brings the following claims against UT Austin: (1) a § 1983 claim alleging denial of procedural due process under the Fourteenth Amendment; and (2) discrimination, failure-to-accommodate, and retaliation claims under Section 504 of the Rehabilitation Act. *Id.* at ¶¶ 16–26.

UT Austin now moves to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 45. Plaintiff filed her response in opposition (ECF No. 51-1[1]), to which UT Austin replied (ECF No. 55).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (citation omitted). The party seeking to invoke subject matter jurisdiction has the burden to establish it. *Ghedi v. Mayorkas*, 16 F. 4th 456, 463 (5th Cir. 2021).

---

[1] Plaintiff timely filed a motion for leave to exceed the 20-page limit for her response in opposition, with her proposed response attached. ECF Nos. 49, 49-1. Plaintiff then filed an untimely, subsequent motion seeking the same relief, with her proposed corrected response attached. ECF Nos. 51, 51-1. The Court does not find Plaintiff's explanation for why she should be allowed to double the permitted page length compelling. However, for the sake of expediency, and given that UT Austin has not objected, the Court **GRANTS** Plaintiff's second motion for leave to exceed the page limit for her response in opposition (ECF No. 51). The Court **DENIES AS MOOT** Plaintiff's first motion for leave to exceed the page limit (ECF No. 49). The Court cites to Plaintiff's corrected response in opposition (ECF No. 51-1) for purposes of this Order.

In determining a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citation omitted). At the pleading stage, the plaintiff's burden is to allege "a plausible set of facts establishing jurisdiction." *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021).

**B.    Rule 12(b)(6)**

In determining a Rule 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). While a complaint does not need detailed factual allegations, it must contain sufficient factual matter that, when assumed to be true, states a claim that has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts do not evaluate the merits of the allegations but only consider whether the plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A pleading must provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation marks and citations omitted).

### III.    DISCUSSION

"When a Rule 12(b)(1) motion to dismiss is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). For the reasons explained below, the Court finds that it lacks jurisdiction over Plaintiff's claims and that further amendment would be futile.

**A.    The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Claims**

UT Austin argues that Plaintiff's claims are barred by sovereign immunity. ECF No. 45 at 5–6. The Eleventh Amendment bars suits in federal court by citizens of a state against their own state or a state agency or department. *Richardson v. Southern Univ.*, 118 F.3d 450, 452 (5th Cir. 1997). As a public university, UT Austin is entitled to sovereign immunity as an arm of the state. *See Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257–60 (5th Cir. 2020) (holding that the University of Texas Southwestern Medical Center is an arm of the State of Texas). To overcome UT Austin's sovereign immunity, Plaintiff must establish that "the state has waived sovereign immunity or Congress has expressly abrogated it." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

Here, Plaintiff's § 1983 claim against the University is barred by sovereign immunity. The State has not waived its sovereign immunity nor has it consented to suit in federal court. ECF No. 45 at 5. Additionally, the Supreme Court has specifically held that 42 U.S.C. § 1983 itself does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979). Thus, UT Austin enjoys sovereign immunity, and Plaintiff's § 1983 claim against it should be dismissed.

Plaintiff's claims under the Rehabilitation Act are likewise barred by sovereign immunity. A state waives its sovereign immunity to claims under § 504 of the Rehabilitation Act by accepting federal funds. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 280–81 (5th Cir. 2005). To state a claim under the Rehabilitation Act, "a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Block v. Tex. Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020). Because Plaintiff has not alleged that UT Austin or a program with which she is involved receives or benefits from federal

funds, she has failed to plead a waiver of sovereign immunity. Thus, her Rehabilitation Act claims must be dismissed as well.

**B.    Leave to Amend**

Plaintiff has requested leave to amend her pleadings. ECF No. 51-1 at 14, 39. Generally, "a *pro se* litigant should be offered an opportunity to amend [her] complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). However, leave to amend is not required where an amendment would be futile or where a plaintiff has already received an opportunity to amend his or her claims. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). An amendment is considered futile if it would fail to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000).

Plaintiff has already had the opportunity to amend her original complaint after the Court advised her of its deficiencies. *See* ECF No. 10. UT Austin argues that further amendment would be futile because Plaintiff, even after having the benefit of filing an amended complaint, has still failed to state claims for violations of due process and the Rehabilitation Act. ECF No. 55 at 8–9. The Court agrees that further amendment would be futile for the reasons set forth below.

**1.    Leave to Amend Plaintiff's Due Process Claim Is Denied As Futile**

The Court previously dismissed Plaintiff's due process claim for failure to state a claim because her allegations indicated that she had received as much due process as the Fourteenth Amendment required, namely that she "be given oral or written notice of the charges against her" and "an explanation of the evidence the authorities have and an opportunity to present her side of the story" through an "informal give-and-take" between her and the administrative body dismissing her. *See* ECF No. 7 at 5–6 (citing *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929–30 (Tex. 1995)); *Goss v. Lopez*, 419 U.S. 565, 581, 584 (1975)). As with Plaintiff's original

complaint, the FAC again demonstrates she received as much due process as was required. Plaintiff confirms that she "received formal notice once the Student Conduct investigation began," "respon[ded] to the Student Conduct referral" and "accepted responsibility for continuing to communicate with the faculty member after he expressed a desire to end contact," and appealed the outcome, which "was reviewed and denied on all grounds." ECF No. 10 at ¶¶ 12A–12B, 12D–12E, 17D. Thus, Plaintiff's FAC again fails to state a due process claim.

### 2.    Leave to Amend Plaintiff's Rehabilitation Act Claims Is Denied As Futile

The Court also previously dismissed Plaintiff's discrimination, failure-to-accommodate, and retaliation claims under the Rehabilitation Act because her allegations (1) indicated that she believed a reasonable accommodation would be one that would excuse her violations of the university's policy or the student code of conduct, and (2) failed to establish a causal nexus between the alleged protected activity and adverse disciplinary action. ECF No. 7 at 8–11. Plaintiff's FAC fails to cure these deficiencies.

Plaintiff's FAC alleges that "[t]he University failed to provide reasonable accommodations or engage in an individualized assessment of Plaintiff's disability-related communication patterns prior to imposing disciplinary sanctions" and "failed to consider Plaintiff's diagnosed disabilities . . . when evaluating the emotional and distress-related content of Plaintiff's emails prior to imposing disciplinary sanctions." ECF No. 10 at ¶¶ 20–21. Plaintiff requests that the Court "[e]njoin enforcement of the disciplinary sanctions imposed on Plaintiff," "order removal of any record of these sanctions from Plaintiff's academic file," and "[r]estore Plaintiff's academic standing." *Id.* at Prayer for Relief. Based on the FAC and Plaintiff's opposition, Plaintiff essentially claims that UT Austin impermissibly sanctioned her for conduct caused by her disabilities. *See e.g.*, ECF No. 51-1 at 11 (arguing that "a public institution must not discipline a

disabled student for conduct resulting from their disability without first determining whether the behavior was a manifestation").

As the Court previously indicated in its initial dismissal of Plaintiff's discrimination and failure-to-accommodate claims, excusing Plaintiff's violations of university policy and the student code of conduct is not a reasonable accommodation. *See* ECF No. 7 at 10–11. (citing *Stearns v. Board. of Educ. for Warren Tp. High Sch. Dist. #121*, No. 99C5818, 1999 WL 1044832, at \*3 (N.D. Ill. Nov. 16, 1999) (holding that the school did not violate the Rehabilitation Act by refusing to accommodate student, who alleged his misconduct was related to his disability, by waiving his) punishment for violating the Code); *Pernice v. City of Chicago*, 237 F.3d 783, 785–86 (7th Cir. 2001) ("It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability."); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 152–54 (1st Cir. 1998) (reversing district court's order enjoining school from enforcing its disciplinary code against student suffering from ADHD by suspending him from the academic program for going "far beyond the requirements of reasonable accommodation"); *Palmer v. Circuit Court of Cook Cnty., Ill.*, 117 F.3d 351, 352–53 (7th Cir. 1997) (upholding enforcement of universal disciplinary rules in a case where an employee's conduct was caused by mental illness)).

Furthermore, the Fifth Circuit has held that whether a plaintiff's disabilities allegedly caused them to engage in the conduct that resulted in the disciplinary action "is of no matter." *Harkey v. NextGen Healthcare, Inc.*, No. 21-50132, 2022 WL 2764870, at \*4 (5th Cir. July 15, 2022). In *Harkey*, the Fifth Circuit distinguished between suffering an adverse action *because of a disability* and suffering the adverse action *because of the conduct* that occurred as a result of the disability. *Id.* at \*3–4. The Fifth Circuit held that, even though the plaintiff alleged that her

sleepwalking disorder caused her to "sleepwalk[] into her male co-worker's room" on a work trip, the conduct itself gave the defendant "reason to fire" her. *Id.*; *see also Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052–53 (5th Cir. 1998) (stating that "[t]he ADA does not insulate emotional or violent outbursts blamed on an impairment" and finding that the plaintiff "was not terminated because of his disability but rather because he violated [the defendant's] policy on workplace violence").

While Plaintiff argues that *Harkey* is irrelevant because it involved an ADA employment claim under Title I rather than a Title II or Rehabilitation Act claim in the context of higher education, the Court disagrees and finds *Harkey* instructive. *See, e.g., Hodges v. Univ. of Tex. Sw. Med. School*, No. 3:22-CV-02583-K, 2023 WL 6389426, at *11–13 (N.D. Tex. Sept. 29, 2023) (applying *Harkey* in dismissing a medical student's claims for violations of the ADA and Rehabilitation Act against the medical school). Plaintiff fails to allege any facts which plausibly show that her disabilities themselves, rather than her conduct even if caused by her disabilities as she alleges, were a motivating factor, let alone the sole reason, for the disciplinary sanctions.[2] Instead, viewing Plaintiff's allegations in the light most favorable to her, the Court can reasonably infer that she was disciplined because her conduct—sending unwanted emails to a faculty member for months—violated UT Austin's code of student conduct.

Regarding Plaintiff's retaliation claim under the Rehabilitation Act, Plaintiff alleges that she "engaged in protected activity . . . by disclosing her disabilities and requesting accommodations, including requesting a trauma-informed review of her case," and that "[t]he

---

[2] Though *Harkey* focused on an ADA claim, its reasoning applies equally to claims under the Rehabilitation Act, as both "are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). The main difference between the ADA and the Rehabilitation Act is that the ADA prohibits an individual's exclusion "by reason of [their] disability," whereas the Rehabilitation Act prohibits an individual's exclusion "solely by reason" of their disability. *Compare* 42 U.S.C. § 12132 *with* 29 U.S.C. § 794(a). While Plaintiff suggests amending her complaint to include an ADA claim, the Court finds that such claim would similarly fail to state a plausible claim for relief.

University retaliated against [her] by escalating to Student Conduct and imposing sanctions instead of offering supportive measures or individualized accommodations." ECF No. 10 at ¶¶ 24–25. However, as explained above, misconduct caused by a disability is not protected under the Rehabilitation Act. *Harkey*, 2022 WL 2764870, at *4. Because Plaintiff's alleged disabilities, which purportedly caused the conduct for which she was sanctioned, are "of no matter," there is not a causal connection between Plaintiff's alleged disability or disclosure of her disabilities and the disciplinary action.

Additionally, though Plaintiff alleges that UT Austin imposed sanctions against her because she submitted a Title IX complaint and contacted the Department of Investigation and Adjudication regarding the faculty member who initially referred her to Student Conduct, these activities occurred after the Student Conduct investigation had already begun. *See* ECF No. 10 at ¶¶ 12A–12C. As other courts have recognized, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse . . . actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Finch v. Tex. Health & Human Servs. Commc'n*, No. H-13-3716, 2015 WL 5674834, at *6 (S.D. Tex. Sept. 25, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2nd Cir. 2001)).

Finally, though not alleged in her FAC, Plaintiff argues that the promotion of the appellate officer who denied her appeal request supports her retaliation claim. ECF No. 51-1 at 22–25. Plaintiff claims that the promotion demonstrates "retaliatory intent" by "consolidating power over nearly every institutional channel Plaintiff might rely on for support, redress, or accommodation." *Id.* at 24. Such allegations are conclusory, speculative, and fail to withstand a Rule 12(b)(6) challenge. In short, Plaintiff's FAC again fails to state claims for discrimination, failure-to-accommodate, and retaliation under the Rehabilitation Act.

**3.    Conclusion**

Based on the above, the Court concludes that granting Plaintiff leave to amend her complaint a second time would be futile. Plaintiff's proposed amendments address jurisdictional deficiencies but do not address the Rule 12(b)(6) deficiencies identified above. *See* ECF No. 51-1 at 1, 14, 39. Plaintiff was informed that her original allegations failed to state a plausible claim for relief, yet she was still unable to state a claim in her FAC. Because Plaintiff has pled her "best case," further amendments would be futile. *See Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008) (citing *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985) (assuming the allegations of the amended complaint constituted the plaintiffs' "best case" because they had "been apprised of the insufficiency of their conclusory allegations" previously)).

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 45) and **ORDERS** that Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[3]

It is **FURTHER ORDERED** that Plaintiff's request for leave to amend her complaint is **DENIED** and all pending motions are **DENIED AS MOOT**.

An order entering final judgment and closing the case shall be entered separately.

**SIGNED** this 7th day of July, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

[3] "Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *United States v. Tex. Tech Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999) (quoting *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)).